# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJVINDER S. DHALIWAL,<br><br>       Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Case No. 1:18-cv-00219-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 15, 17, 18) |

## I.

## INTRODUCTION

Plaintiff Rajvinder S. Dhaliwal ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hypertension, hyperlipidemia, plantar fasciitis, asthmatic bronchitis, obstructive sleep apnea, obesity, insomnia, non-insulin dependent diabetes mellitus, left shoulder rotator cuff tear, left knee arthritis, coronary artery disease, depression and anxiety. For the

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

reasons set forth below, Plaintiff's Social Security appeal shall be granted.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 7, 2014, and a Title XVI application for supplemental security income on November 4, 2014. (AR 85, 86.) Plaintiff's applications were initially denied on December 8, 2014, and denied upon reconsideration on February 11, 2015. (AR 109-112; 118-123.) Plaintiff requested and received a hearing before Administrative Law Judge Vincent A. Misenti ("the ALJ"). Plaintiff appeared for a hearing on March 16, 2017. (AR 29-64.) On June 27, 2017, the ALJ found that Plaintiff was not disabled. (AR 12-23.) The Appeals Council denied Plaintiff's request for review on December 26, 2017. (AR 1-3.)

### A.     Hearing Testimony

Plaintiff appeared with counsel and testified at a video hearing on March 16, 2017. (AR 33-52.) Plaintiff is married and has two children. (AR 33.) He lives in a house with his wife and adult daughter. (AR 34.) Plaintiff's wife and daughter both work. (AR 34.) Plaintiff is 5 feet, 11 inches tall and weighed 224 pounds. (AR 33.) He is left handed. (AR 33.) Plaintiff has a high school education. (AR 34.)

Plaintiff has a driver's license and drives for work two to three hours per day. (AR 34.) Plaintiff is an Uber driver. (AR 34.) Plaintiff started driving for Uber around May 2015 and has been driving for about two years. (AR 35.) He works three to four days a week. (AR 35.) He works when he is not having any pain. (AR 35.) He has pain and swelling in his knee and cannot sit too much. (AR 35.) He also has swelling in his ankle. (AR 35.) He only drives locally. (AR 36.) He makes forty to fifty dollars per day. (AR 36.) He drives thirty to forty miles per day. (AR 36.) He is notified when there is a job on his iPhone. (AR 36.) Plaintiff netted $5,074 in 2015, his gross was $13,500. (AR 37.) In 2016, Plaintiff estimated that he netted eighteen to nineteen thousand dollars. (AR 38.) He was to provide a 1099 for 2016 after the hearing. (AR 39.)

Plaintiff is unable to lift much with his left hand. (AR 36.) Plaintiff is disabled because

he cannot pick anything up with his left arm and cannot do any work with the left arm.  (AR 39.)  His doctor gave him disability because his total left rotator cuff is gone.  (AR 39.)  He also has swelling in his knee and was scheduled for an arthroscopy the following week and was to have an MRI because of the swelling.  (AR 39.)  Plaintiff continues to work for Uber because he has to eat.  (AR 40.)  He needs money to make his house payment and cannot sit home.  (AR 40.)  He found the job with Uber to provide income for his household.  (AR 40.)

Plaintiff injured his shoulder in an accident in February and had shoulder surgery in March.  (AR 40.)  He cannot move his arm up, cannot pick up anything, and cannot do too much writing with his left arm.  (AR 40.)  He takes pain medication, but still has a lot of pain.  (AR 40.)  Plaintiff takes prescription ibuprofen for pain, 600 or 800 milligrams.  (AR 40-41.)  Plaintiff takes the ibuprofen once a day.  (AR 41.)  Plaintiff sleeps better when he takes the medication and also takes a sleeping pill.  (AR 41-42.)  Sometimes, he will be tired in the morning.  (AR 42.)  When he is home he will relax and put ice on his shoulder.  (AR 42.)  When he drives more than two to three hours he will have a lot of pain and will take atenolol.  (AR 42.)

Since Plaintiff is left handed he sometimes has to change the shift and will have pain.  (AR 42.)  He can use his left hand for steering.  (AR 42.)  If he does more activity with his left hand while driving he will have pain.  (AR 42.)  Sometimes Plaintiff drives with one hand.  (AR 42.)  It is hard for Plaintiff to make a U-turn.  (AR 43.)  Plaintiff would not state the amount of time that he used his left hand while driving.  (AR 43.)  He tries not to use his left hand, but if he accidently does use it then he will have pain.  (AR 43.)  Plaintiff had physical therapy for his shoulder and a couple other therapies, but they will not approve anymore.  (AR 44.)  If Plaintiff accidently uses his left arm, he will have pain.  (AR 49.)

Plaintiff has a surgery on his knee in 2011.  (AR 44.)  He started having pain and swelling again.  (AR 44.)  He had some injections and the doctor said they cannot do anything.  (AR 44.)  Plaintiff has swelling whether he is sitting or standing.  (AR 44.)  Plaintiff elevates and ices his knee every night.  (AR 48.)  He cannot stand for more than an hour and a half an hour.  (AR 44.)  Plaintiff cannot walk.  (AR 44.)  He can only be on his feet for less than one hour in an eight-hour day.  (AR 49.)

1  Plaintiff's doctor told him that he should walk as much as he can because he had he had a
2  heart attack. (AR 44.) But Plaintiff cannot walk because of his knees. (AR 44.) He saw the
3  doctor the prior day and the doctor recommended an MRI. (AR 44.) When he drives for Uber,
4  Plaintiff only sits. (AR 45.) But, after sitting he will have swelling. (AR 45.) Plaintiff does not
5  help his clients with their bags. (AR 45.) They have to take care of their bags themselves. (AR
6  45.) Plaintiff does not use any assistive devices, but they gave him exercises to do every day.
7  (AR 45.) He is to put ice on his shoulder, knee, and ankle for half an hour to an hour. (AR 45-
8  46.) He can only walk ten minutes. (AR 46.) Plaintiff can only stand for ten minutes because of
9  his knee swelling. (AR 49.) Plaintiff has more problems now than he did in March 2016. (AR
10 46.) Plaintiff's leg swelled even during the ten-minute drive from his house to the hearing. (AR
11 46.)

12     Plaintiff is unable to work because he cannot walk, he cannot pick up anything with his
13 left hand, he cannot write, and he has stents in his heart. (AR 46.) He lost his business because
14 of the problems with his heart, knee, and shoulder. (AR 46.) Plaintiff went to the doctor and
15 they told him that his cholesterol and calcium are too low. (AR 46.)

16     Sometimes Plaintiff has pain and he worries a little bit when he has stress. (AR 47.) He
17 takes four to five medications for his heart every day. (AR 47.) He has "9/11" medications.
18 (AR 47.) He takes nitroglycerin once a week for chest pain. (AR 47.) He has chest pain and
19 gets short of breath whenever he feels stress. (AR 47, 49.) The nitroglycerin resolves his chest
20 pain and shortness of breath. (AR 48, 49.)

21     During the day, Plaintiff does not nap, but he will lay down for two to three hours every
22 afternoon. (AR 50.) Plaintiff takes his medicine, eight or nine pills, in the morning and then will
23 drive at 9:00. (AR 50.) After work he will go home, lie down, and use ice or exercise. (AR 50.)
24 When he feels better he will go, if not he stays home. (AR 50.)

25     Plaintiff has been seeing Dr. Phiripes for more than two years. (AR 50.) He sees Dr.
26 Phiripes every month to six weeks. (AR 50.) Sometimes he will go every two and a half
27 months. (AR 50.) The last six months he has been seeing Dr. Phiripes every other week. (AR
28 50.) Dr. Phiripes prescribes medications and gives him exercises. (AR 51.) Plaintiff does not

have side effects from any of his medication. (AR 51.) Plaintiff does not do anything after he comes home from driving. (AR 51.) His wife does the cooking and his wife and daughter do all the housework. (AR 51.) He has someone who takes care of the yard. (AR 51.)

Plaintiff goes to the temple on Sundays. (AR 52.) But he does not go anywhere else. (AR 52.)

Susan L. Creighton-Clavel, a vocational expert ("VE"), also testified at the hearing. (AR 52-62.)

### B.    ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.

- Plaintiff has engaged in substantial gainful activity since August 11, 2014, the alleged onset date.

- Plaintiff has had the following severe impairments: a history of left shoulder rotator cuff tear, left knee arthritis, and coronary artery disease.

- Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has had a residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with additional limitations as follows: with the left, dominant upper extremity, he is able to perform frequent reaching in all directions. He is able to perform occasional climbing of ramps and stairs, as well as occasional balancing, stooping, kneeling, crouching, and crawling; unable to climb ladders and scaffolds; unable to work around unprotected heights; and unable to work in environments with concentrated exposure to moving mechanical parts.

- Plaintiff has been capable of performing his past relevant work. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability as defined in the Social Security Act from August

11, 2014, through the date of this decision.

(AR 17-22.)

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

### DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by rejecting the opinions of his treating physicians, Drs. Simonian and Phiripes and by rejecting his symptom testimony. Plaintiff seeks for the matter to be remanded for payment of benefits. Defendant counters that the ALJ properly evaluated Plaintiff's symptom testimony and assigned weight to the treating doctors' opinions which is supported by substantial evidence in the record. Plaintiff replies that the ALJ did not provide specific and legitimate reasons to reject the treating physicians' opinions and failed to properly consider his symptom testimony.

### A.    Claimant Credibility

Plaintiff argues that the ALJ observed that Plaintiff was working two to three hours per

day finding that it did not amount to substantial gainful activity; and therefore, the fact that he was working bears little in the disability process. Plaintiff explained that he only works a few hours each day. Plaintiff also contends that, while the ALJ noted that Plaintiff traveled to India, the activity has little to do with Plaintiff's left-hand limitations. Plaintiff asserts that since he has a massive rotator cuff tear that is not repairable it does not matter that there is a lack of assessment of his shoulder injury or description of impairment in subsequent medical records. Plaintiff alleges that the ALJ did not articulate specific reasons to reject his testimony that he has no significant function in his left arm.

Defendant counters that the ALJ properly considered Plaintiff's symptom testimony and found that it was not fully supported by the record as a whole. First, the ALJ found that Plaintiff's symptoms were not as limiting as he claimed in light of the fact that he was driving for a taxi service during the relevant time period. Defendant contends that the ALJ gave Plaintiff the benefit of the doubt in finding that his driving was not substantial gainful activity, but that regardless his work activity demonstrates that he retained the ability to work. Second, Defendant argues that the ALJ reasonably found that Plaintiff's ability to travel on a long distance international flight to India contradicted his claims of markedly limited functioning, such as having to lie down, ice his knee and shoulder and being limited to walking less than an hour per day. Third, Defendant contends that the subsequent lack of objective findings in the medical record supports the ALJ's finding that Plaintiff adequately recovered from his shoulder surgery and cited to objective evidence in the record to support that his other severe impairments did not prevent Plaintiff from working. Finally, Defendant argues that the ALJ cited to the objective evidence, as well as Plaintiff's own statements that show he was capable of light exertional work activity.

Plaintiff replies that he provided evidence to demonstrate that he had an impairment that likely caused limitations in reaching, handling, pushing, and pulling with his upper left extremity. Plaintiff argues that his attempts to work should not be used to prevent him from receiving benefits because it would discourage that which the regulations encourage. Plaintiff argues that it is common knowledge that passengers may receive extra time boarding an airplane

and may receive wheelchair assistance in the airport, and there is no evidence that he had to push or pull his mode of transportation. Plaintiff contends that Dr. Simonian described his surgery as failed and that the reasons provided by the ALJ must relate to his ability to lift, carry, push, and pull with his upper left extremity.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible.  Brown-Hunter, 806 F.3d at 492.

The ALJ found that

> the claimant's medically determinable impairments could reasonably have been expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

(AR 20.)

### 1.  Activity Inconsistent with Plaintiff's Stated Limitations

The ALJ went on to discuss the inconsistencies in the record.  "Throughout the record, the claimant emphasizes that his condition has markedly limited his functioning.  Notably, in his statement accompanying his August 2014 application for Social Security Administration disability benefits, he alleges that he has been unable to work due to a left shoulder injury and heart problems."  (AR 20, 319.)  At the March 16, 2017 hearing, Plaintiff added that his ongoing impairments include left knee problems.  (AR 20, 35, 39, 44, 46.)  He alleged that he is able to stand less than one-hour total per day and that he has to use ice on his knee and left shoulder.  (AR 20, 42, 44, 45-46, 48.)  Further, Plaintiff testified that he has to lie down for two to three hours during the day.  (AR 20, 50.)

The ALJ found that the record reflects that Plaintiff has worked during the period at issue.  (AR 20.)  The ALJ noted the February 12, 2017 prehearing memorandum filed by Plaintiff's counsel in which it is stated that Plaintiff has been working since 2015 as an Uber driver and works three to five hours per day.  (AR 20, 343.)  Although Plaintiff stated at the hearing that he drove with his right arm, using his left hand for steering, and only accidently used

his left arm while driving (42-43), the ALJ reasonably concluded that Plaintiff's ability to drive a car for two to five hours a day was inconsistent with his statements that he was unable to work due to limited use of his left arm.

Similarly, the ALJ noted a March 2017 treatment record in which Plaintiff was seen for a stomach bug after he returned from India. (AR 21, 591.) While Plaintiff argues that there is no evidence in the record as to how Plaintiff transferred through the airport or what assistance he received, the ALJ could reasonably conclude that Plaintiff's ability to travel to India was inconsistent with his statements that he was required to ice his shoulder and knee every day for half an hour to an hour; has to lay down for two to three hours every afternoon; cannot sit much; and must elevate his leg every night. (AR 35, 44, 45-46, 48, 50.) Plaintiff argues that it is common knowledge that travelers can receive assistance in navigating through the airport and onto the plane, but the ALJ could reasonably find that the rigors of international travel are inconsistent with Plaintiff's testimony that he is unable to walk and sit, must lay down for several hours a day, elevate his leg, and apply ice to his shoulder and leg. The ALJ pointed to specific activity that Plaintiff engaged in that was inconsistent with his symptom testimony. Orn, 495 F.3d at 639. The ALJ provided a clear and convincing reason to discount Plaintiff's testimony.

Plaintiff argues that the ALJ did not articulate reasons to reject Plaintiff's testimony that he was unable to use his left arm, but Plaintiff cites to no case, and the Court is unaware of any, that require the ALJ to specifically address every alleged limitation in discussing a plaintiff's symptom testimony. Here, the ALJ provided specific reasons for his finding that Plaintiff's limitations were not as severe as he alleged. Further, as discussed in the next section, the ALJ did provide reasons to reject Plaintiff's testimony regarding his arm limitations.

2.      Inconsistency with Medical Record

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's symptom

testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ found that the record shows that Plaintiff has had an adequate recovery from his left shoulder surgery. (AR 21.) The ALJ noted that March 2017 treatment records indicate no significant abnormality in his shoulder. (AR 21.) Plaintiff was examined on March 7, 2017, and extremity examination revealed mild left knee effusion and crepitance, and trace edema of the left distal tibial area. (AR 21, 594.) Extremity examination on follow up on March 14, 2017 shows only "[l]eft knee joint with moderate effusion. Positive popping with valgus shift of the knee joint upon lateral stressing." (AR 589.)

The ALJ also noted that while Plaintiff had a history of coronary artery disease, a September 2014 treadmill test showed normal results and concurrent nuclear cardiology testing indicated normal results including an ejection fraction of 62%. (AR 21, 438-439, 578-579.)

Finally, the ALJ noted that a January 25, 2017 treatment record showed that Plaintiff denied any ongoing chest discomfort. (AR 21, 568.) Also, a March 14, 2017 treatment record shows that while Plaintiff complained of joint pain and swelling in his knee, he denied cramps, muscle weakness, stiffness, arthritis, and decreased strength. (AR 21, 588.)

The ALJ provided specific clear and convincing reasons to reject Plaintiff's symptom testimony.

## B. Physician Opinion

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Orn, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

   1. Dr. Simonian

  Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Simonian because it came too soon after surgery. Defendant counters that the ALJ properly gave little weight to Dr. Simonian's opinion because it was proffered only five months after Plaintiff's surgery and the subsequent medical record demonstrates that Plaintiff adequately recovered from his surgery. Plaintiff replies that Dr. Simonian's opinion is consistent with the objective evidence in the record.

  Plaintiff argues that the objective evidence demonstrates that Plaintiff has a massive tear in his rotator cuff and that this supports the physician's opinion. However, the ALJ considered that Plaintiff has a torn rotator cuff and the issue is how that affects his ability to use his left arm. The ALJ found that Plaintiff has a severe shoulder impairment and went on to evaluate the medical evidence in determining how the tear affected Plaintiff's ability to perform work.

  In addressing whether Plaintiff's shoulder impairment met the listing requirements, the ALJ found that Plaintiff had surgery on his shoulder in March 2014. (AR 19, 410-412.) After Plaintiff's failed shoulder surgery, the ALJ found that the record reflects adequate restoration of function in his shoulder. (AR 19.) The ALJ considered the September 2014 MRI examination showing no significant impairment; instead the MRI indicates a history of repair, a moderate to large subacromial spur, and a soft tissue focus which could represent a displaced fragment or other loose body. (AR 19, 420-421.)

  The ALJ found that March 2017 treatment records indicate no significant abnormality in Plaintiff's shoulder. (AR 21, 589, 594.) The ALJ considered an August 2014 report completed

by Dr. Simonian. (AR 21, 406.) Dr. Simonian returned Plaintiff to light duty work on August 11, 2014. (AR 406.) Dr. Simonian opined that Plaintiff could lift, carry, push and pull no more than 5 pounds and do no work above shoulder level. (AR 406.) The ALJ gave little weight to this opinion because it was made very shortly after Plaintiff's March 2014 surgery and the updated record reflects adequate recovery from his surgery and does not seem consistent with the degree of limitation assessed by Dr. Simonian. (AR 21.)

Plaintiff contends the ALJ did not consider the MRI finding that Plaintiff's rotator cuff had retorn and the post-MRI opinion that the surgery had failed. However, the ALJ did discuss the September 2014 MRI results which showed a retear of the rotator cuff but found that Plaintiff had received adequate restoration of function of his shoulder. (AR 19, 21, 420-421.)

The ALJ gave little weight to the opinion because it was given five months after surgery, but on October 4, 2014, Dr. Simonian noted that the repeat MRI reveals evidence of tearing of about half of the previous repair. (AR 394.) He recommended against another surgery due to the extensiveness of the previous repair and that it had failed. (AR 394.) Defendant argues that Dr. Simonian advised Plaintiff that he could receive cortisone injections if his symptoms worsened and Plaintiff never sought such treatment. However, the ALJ did not provide this as a reason to reject the physician opinions and the cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

On September 22, 2014, Plaintiff was examined at Dr. Simonian's office. (AR 395.) On examination, Plaintiff could forward elevate actively to about 100 degrees; abduction was to about 90 degrees; and external rotation to 50 degrees with pain with movement. (AR 395.) Plaintiff was noted to have a degree of permanent impairment with the arm. (AR 395.)

The ALJ relied on records of visits in March 2017 to find that Plaintiff had adequate restoration of function in his shoulder. However, Plaintiff was seen at these visits with complaints of knee pain and swelling. (AR 585, 591.) The objective findings reflect only examination of his lower extremities. (AR 589, 594.) The record does not reflect an

examination of the upper extremities nor can it reasonably be inferred that such examination took place. Therefore, these records are not substantial evidence to support a finding that Plaintiff had adequate shoulder function.

The ALJ did not provide a specific and legitimate reason to reject Dr. Simonian's August 2014 opinion.

### 2. Dr. Phiripes

Plaintiff contends that Dr. Phiripes opinion is consistent with the September 2014 MRI and the findings of Dr. Simonian and that the ALJ erred by failing to articulate sufficient reasons to reject the opinion. Defendant counters that the ALJ characterized the limitations opined by Dr. Phiripes as less than a full range of sedentary work and this is a reasonable characterization of the opinion. Defendant argues that the ALJ properly found that Dr. Phiripes opinion was not consistent with the clinical signs and findings in the record and appeared to have been based to a significant extent on Plaintiff's subjective complaints. Plaintiff replies that Dr. Phiripes' opinion is not reasonable characterized as sedentary work, but addresses Plaintiff's capacity to perform light exertion with significant limitations on his ability to use his upper left extremity.

The ALJ gave little weight to an evaluation, dated June 2016, by Plaintiff's treating physician, Dr. Phiripes. (AR 21.) The ALJ described Dr. Phiripes opinion of Plaintiff's "residual functional capacity in terms consistent with less than a full range of sedentary level exertion. (AR 21.) Dr. Phiripes completed a Physical Residual Function Capacity Medical Source Statement.[3] (AR 564-567.) Dr. Phiripes stated that she has seen Plaintiff every 2-3 months for 9 months. (AR 564.) Plaintiff has been diagnosed with a massive rotator cuff tear on the left; left arm weakness, CAD, stress, and insomnia. (AR 564.) His prognosis is poor. (AR 564.)

Plaintiff has left arm pain, numbness, weakness, and weak grip. (AR 564.) He has a dull pain in his left shoulder that gets worse with range of motion. (AR 564.) The most significant clinical findings and objective signs are decreased range of motion, unable to raise left arm

_____

[3] The date that the report was completed is unclear. It appears to be dated either 63/31/16 or 103/31/16. (AR 567.)

1  greater than 40 degrees externally, forward elevation 90 degrees, and a weak grip of 2/5. (AR

2  564.) Plaintiff's medications cause side effects of drowsiness, fatigue, nausea, and upset

3  stomach. (AR 564.) His impairment has lasted since February 28, 2014. (AR 564.)

4  Dr. Phiripes opined that with his left-hand Plaintiff can rarely lift and carry less than 5

5  pounds, never lift more than 5 pounds, and there are no limitations with right hand. (AR 564-

6  565.) Plaintiff has no problems ambulating, balancing, stooping, or bending. (AR 565.) He

7  must lie down 15 minutes due to stress for less than one hour during an eight-hour day. (AR

8  565.) Plaintiff can sit about eight hours in an eight-hour day. (AR 565.) He would need an

9  unscheduled break every 1-2 hour for 15 minutes. (AR 565-566.) Plaintiff needs to elevate his

10  legs above the heart when sitting for 0 to 15 minutes every 2 hours. (AR 566.) Plaintiff has

11  significant limitations in reaching, handling, and fingering. (AR 566.) With his upper left

12  extremity, Plaintiff can grasp, turn, or twist objects 5 percent of an 8-hour workday; perform fine

13  manipulations 5 percent of an 8-hour workday; and reach with his arms 5 percent of an 8-hour

14  workday. (AR 566.) He cannot push or pull with left arm. (AR 566.)

15  Plaintiff can climb stairs and ramps, but no ladders, scaffolds, or ropes. (AR 566.)

16  Plaintiff has anxiety, stress, and insomnia. (AR 566.) Occasionally his severe pain will interfere

17  with attention and concentration. (AR 566.) Plaintiff would be off task and unable to work 15

18  percent of 8-hour workday. (AR 567.) Plaintiff would miss one day or less per month due to

19  impairments or treatment. (AR 567.) Compared to an average worker, Plaintiff would be 50

20  percent or less efficiently able to perform a job on a sustained basis. (AR 567.) Plaintiff is

21  unable to lift his left arm; unable to pick up, manipulate or hold things; has a very weak grip; and

22  limited range of motion. (AR 567.) Dr. Phiripes stated that her opinion was based on history,

23  progress and office notes, x-rays, physical exam, and consultative medical opinions. (AR 567.)

24  The ALJ noted that the record documents Plaintiff's history of treatment by Dr. Phiripes

25  citing to the treatment records from June 2015 to March 2017. (AR 21, 585-752.) However, the

26  ALJ found that the record does not seem to show clinical signs and findings consistent with the

27  degree of limitation assessed by Dr. Phiripes. (AR 21.)

28  On June 19, 2015, Plaintiff was seen by Dr. Purewall to establish care for his high blood

pressure. (AR 747.) Plaintiff reported that he walked daily for exercise. (AR 750.) He had an unremarkable examination and extremity examination revealed no clubbing, cyanosis, edema, or deformity noted with normal full range of motion of all joints. (AR 750.) Review of treatment notes show generally unremarkable physical examinations and reveal no extremity examination with the exceptions discussed as follows. (AR 503, 630, 687, 691-692, 696, 711, 721, 731, 743.)

The next record that reflects any examination findings of the extremities is on September 8, 2015, where it is noted that Plaintiff has no edema. (AR 737.) On December 17, 2015, Plaintiff saw Dr. Phiripes and extremity examination notes no clubbing, cyanosis or edema. (AR 705.)

On March 18, 2016, Plaintiff saw a nurse practitioner complaining of shoulder pain and examination notes decreased range of motion in the left shoulder. (AR 682.) On March 29, 2016, the nurse practitioner noted on musculoskeletal examination left arm has weak grip with very minimal function. (AR 676.)

On May 7, 2016, Dr. Phiripes' extremity examination notes right foot tenderness at the insertion of the plantar fascia. (AR 670.) Dr. Phiripes saw Plaintiff again on June 28, 2016; July 28, 2016; August 25, 2016; October 6, 2016; and October 28, 2016, and extremity examination notes only no edema. (AR 624, 642, 650, 658-659, 664-665.)

On December 8, 2016, Dr. Phiripes noted no edema, but that Plaintiff had some point tenderness in the right calcaneus consistent with plantar fasciitis. (AR 617.)

Further, during this same time period, Plaintiff was seen by Dr. Rugama due to difficulty sleeping. On June 21, 2015, Dr. Rugama noted that Plaintiff had symmetric grip strength. (AR 726.) On September 21, 2015, Plaintiff reported that he was working as a store clerk from 9:30 a.m. to 8:30 p.m. on Mondays and driving for Uber Tuesdays through Saturdays between 8:00 a.m. and 7:00 p.m. (AR 723.) Extremity examination notes only that the lower extremities are without pitting edema; no cyanosis and no clubbing of the nails. (AR 726.)

On June 22, 2016; October 10, 2016; and January 25, 2017, Dr. Sandhu examined Plaintiff and extremity exam notes no leg edema with good and equal distal pulses. (AR 575.)

The ALJ need not accept the opinion of any physician that is brief, conclusory, and

unsupported by clinical findings.  Thomas, 278 F.3d at 957.  Here, the extreme limitations opined by Dr. Phiripes are not supported by the record.  While the record does have some findings of limited range of motion, Dr. Purewall found that Plaintiff had full range of motion in all joints in his extremities.  Further, the only hand findings show that Plaintiff had symmetrical grip strength and there are no findings that would support the extreme fingering limitations opined by Dr. Phiripes.  The ALJ provided a specific and legitimate reason for the weight provided to Dr. Phiripes June 2016 opinion.

Due to the lack of support in the treatment notes, the ALJ found that Dr. Phiripes seemed to uncritically endorse Plaintiff's subjective complaints to a significant extent.  (AR 22.)  Due to the lack of findings to support the limitations in the opinion, the ALJ could reasonably conclude that Dr. Phiripes was relying on Plaintiff's subjective complaints in completing the June 2016 report.  An ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that have been properly discounted.  Fair v. Bowen, 885 F.2d 597, 605 (1989).

The ALJ provided specific and legitimate reasons for the weight provided to Dr. Phiripes opinion testimony.

3.    Agency Physicians

Plaintiff contends that the ALJ erred by giving weight to the agency physicians because they did not state what Plaintiff's capabilities were but described that it was expected he would have certain abilities in the future.  Plaintiff argues that the agency physicians expected his shoulder to have healed completely by September 2015, but there is no evidence to suggest that such healing occurred.

Defendant counters that the agency physicians did not opine as to Plaintiff's abilities in the future, but stated what he was currently able to do with the expectation that he would have healed completely by September 2015.  Defendant argues that the limitations opined by the agency physicians were to accommodate the on-going shoulder impairment.

Plaintiff replies that the state agency physicians did not consider that Plaintiff's rotator cuff was reinjured and further they found that Plaintiff would have limitations in reaching but did quantify such limitations.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, 242 F.3d at 1149. "The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.' " Garrison, 759 F.3d at 1012 (citations omitted).

The ALJ found that two State Agency physicians described Plaintiff's residual functional capacity in terms consistent with a reduced range of light level exertion. (AR 21.) Plaintiff was able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; able to perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling; limited in reaching with the left upper extremity; and unable to work in environments with concentrated exposure to significant hazards, including work at unprotected heights or near moving machinery. (AR 21-22.) The ALJ gave these opinions significant weight finding that they were well-supported by the overall record. (AR 22.)

On December 3, 2014, Dr. Lowell opined that from September 1, 2014, until September 1, 2015, Plaintiff had the ability to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; sit six hours in an 8-hour day; occasionally climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch and crawl. (AR 70-71, 80-82.) Plaintiff was limited in reaching in front or laterally and overhead with his left arm. (AR 71.) Plaintiff had no handling, fingering, or feeling limitations. (AR 71.) Dr. Lowell considered that Plaintiff had a repair of the left rotator cuff but did not follow up with physical therapy and retore the rotator cuff. (AR 71.) He opined that the left rotator cuff tear is expected to have healed completely by September 15. (AR 71.) Plaintiff was to avoid concentrated exposure to hazards such as machinery and heights. (AR 72.)

On reconsideration, Dr. Nasrabadi affirmed the residual functional capacity assessment on February 10, 2015. (AR 92-94, 102-104.) Here, all physicians who have considered Plaintiff's residual functional capacity have determined that he has limitations in his shoulder.

The agency physicians both found that Plaintiff would be limited in his left shoulder in reaching to the front or laterally and overhead. (AR 103.) While the ALJ gave significant weight to the agency physicians opinions, he did not impose any reaching limitations.

Further, while the agency physicians opined that Plaintiff's shoulder injury would be completely healed by September 15, 2015, the record evidences that Plaintiff's shoulder injury may not be completely healed. On January 2, 2015; and January 9, 2015, Plaintiff was examined and was found to have range of motion from 0 to 130 degrees and received injections. (AR 551, 552.) On June 19, 2015, Dr. Purewall examined Plaintiff and found that he had normal full range of motion in all his joints. (AR 750.) Plaintiff was seen complaining of shoulder pain in March 2016 and was found to have decreased range of motion in his left shoulder. (AR 676, 682.) On September 17, 2016, Plaintiff appears to have attended physical therapy and his left shoulder was found to have flexion of 100 degrees, abduction of 70 degrees and "ER" of 50 degrees with pain inhibition in all motion.[4] (AR 414.) His left shoulder strength was 2+/5. (AR 414.)

The agency physicians' opinions are not substantial evidence to support the residual functional capacity assessment.

**B.    Remand**

Plaintiff argues that the physician opinions should be credited as true and this action remanded for benefits. Defendant counters that remand for further development of the record is proper as the later medical record contains very little assessment or treatment of Plaintiff's shoulder and further development would be useful to determine Plaintiff's shoulder limitations.

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for

---

[4] The referral itself is dated September 17, 2014, and the notes indicate that it may be inappropriate healing or a reinjury and that diagnostic imaging may be beneficial. Since at this time, Plaintiff had received a second MRI indicating that he had retorn the rotator cuff and based on the date of the referral, the date of these findings is questionable.

additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020.

Even if the Court was to credit Dr. Simonian's opinion as true it would not necessarily lead to finding that Plaintiff was disabled. At the hearing, the ALJ presented a hypothetical of an individual that was limited to occasional reaching with the dominant extremity and the ALJ found that there were jobs that this individual could perform. (AR 57.) No hypothetical was presented of an individual who was limited to no overhead reaching.

Further, as discussed above, Plaintiff has received very limited if any treatment for his left shoulder after June 2015. Additionally, the findings in the record are contradictory as some records indicate that Plaintiff has full range of motion in his left arm and other records indicate that his left shoulder range of motion is limited to some extent.

The Court finds that further development of the record would be beneficial to determine what Plaintiff is capable of doing with his left arm due to his shoulder injury. Upon remand the ALJ shall consider all medical evidence regarding Plaintiff's shoulder injury anew, obtain additional medical opinion evidence as to Plaintiff's physical functioning from a consultative

examiner or a medical expert, and further develop the record as deemed necessary.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's opinion regarding Plaintiff's left shoulder impairment is not supported by substantial evidence. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Rajvinder S. Dhaliwal and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**January 11, 2019**__

UNITED STATES MAGISTRATE JUDGE